## No. 13,123.

### THOMAS J. SEIBERT VS. McMANUS & LONG.

#### SYLLABUS.

1. Experiments made in the absence of parties interested in the results thereof, are, as evidence, in the nature of hearsay, and if received, the facts and condition under which they were made should be shown to have been identical with those of the case before the court.

2. The fact that a furnace erected on property in New Orleans should have been put up without prior submission to the city authorities as to the safety of the plan of construction, and that the plan of construction may not have been in accordance with rules adopted by the council concerning such kind of work, does not do away with the necessity of proving that this construction was the cause of a fire on the property by which that of his neighbor was destroyed.

APPEAL from the Civil District Court, Parish of Orleans— Monroe, J.

*Lazarus & Luce* for Plaintiff, Appellant.

*Bernard McCloskey* for Defendants, Appellees.

The opinion of the court was delivered by NICHOLLS, C. J.

#### STATEMENT OF THE CASE.

NICHOLLS, C. J. Plaintiff's demand is based upon allegations that the firm of McManus & Long, composed of Hugh McManus and Nicholas Long, both of your said city and State, and the individual members of said firm, are legally and justly, and *in solido,* indebted to petitioner in the sum of six thousand seven hundred dollars, for this, to-wit:

That on and before August 23, 1895, petitioner owned three lots in the square bounded by Carondelet Walk, St. Peter, Rocheblave and

Dorgenois streets, in this city; that there was constructed and erected on said lots, and owned by petitioner, a dwelling house, cooper shop, work shop, warehouse, and other outbuildings; that the said defendant firm owned a lot immediately adjoining that of petitioner, and which was formerly part of the same; that the said firm owned and operated on their said lot a cooper shop or factory; that on or about the night of August 23, 1895, in the early part of the night, a fire originated in the cooper shop of said defendants, destroying the same; that the flames and cinders from said fire communicated to the dwelling house and cooper shop of petitioner; that by reason of said fire his cooper shop was entirely destroyed, with all the materials, tools, and implements therein, and that the dwelling house of petitioner was almost entirely destroyed, it being so badly injured as to become an almost total wreck.

Petitioner avers that said fire originated and was caused by the gross fault and negligence of said defendants and persons in their employ; that there was a vice or defect in the construction of the furnace and burner of defendants, and which was largely the cause of said fire; that shavings were burned in the burner every day and were left burning there after the shop was closed at night, burning until late in the night; that no night watchman, nor any one else, remained on the premises at night; that, as aforesaid, the fire was largely caused by the vice or defect in the construction of said burner and furnace; that petitioner believes that the brick work of said burner was built around the studdings on which the roof of the house rested for support; that the studdings caught fire from the burner; and that it was due to this special fault of construction that the said fire originated.

The petition sets forth the elements of damage in detail.

The prayer of the petition is for judgment *in solido* against the partnership of McManus & Long, and the individual members thereof.

Defendants answered, pleading the general issue.

The District Court rendered judgment in favor of the defendants, and plaintiff appealed.

### OPINION.

The plaintiff claims that he has shown that there was negligence in the construction of a certain furnace, chimney and fireplace, which the defendant, Long, erected at the gable end of a building on his property which he was altering to convert into a cooper shop.

The building was of wooden frame, surrounded upon the outside with corrugated iron instead of weather boarding, and ceiled within with planking.

In making the change the wooden upright posts at the gable ends, and the corrugated iron thereto attached, were cut off at a certain distance from the bottom, the chimney was run up on the outside of the building, the brick walls of the sides of the intended furnace were projected into the building sufficiently far to enable the end of the cut-off posts to rest upon bricks placed across the side walls, forming, as it were, a brick mantel piece, as the inner front of the furnace.

The wooden posts were not removed, but permitted to remain above as they had been before, the space between them being filled up with brick, running back until they reached the corrugated iron behind. The posts were two inches wide by four in depth. The ceiling just above the front or inner end of the furnace must have been temporarily removed, but afterwards replaced. The front wall of the chimney, that next to the building, seems to have been nine inches deep; the depth of the row or rows of bricks between the ends of the wooden posts and the top of the furnace on the inside of the building was not positively established. It is charged that the wooden posts should have been entirely removed and not permitted to remain; that there was too short a distance for safety between the brick ends of the posts in the rear to which the corrugated iron was attached and the interior of the chimney, and too short a distance between the bottom ends of the posts and the top of the inner front of the furnace.

That the fire used in cooperage establishments, produced by burning ends of hickory poles and cypress shavings, is very hot, and would almost certainly lead up first to the carbonization of and ultimately to the setting fire to the posts. That this, in fact, happened and from the resulting fire plaintiff's property was itself destroyed. That the cooperage partnership of McManus & Long were using the building as a cooper shop at the time of the fire and were liable to the plaintiff *in solido* for the consequences of the same.

It is not charged that the fire within the furnace was other or greater than it was usual to have for the purposes of the kind of business. Plaintiff sent to New York for a pyrometer with which he made an experiment at his own furnace (he being himself a cooper and his furnace resembling, though somewhat different from, that of Long) in order to see at what degree of heat, wood, without being in direct con-

tact with fire, would be caused to ignite, and he offered to introduce, and was permitted to introduce, the results of that experiment over defendants' objection.

Plaintiff charges that not only was the distance between the posts and the top of the furnace, and that between the back of the posts and the interior of the chimney, too little, but that the defendant, Long, in violation of the ordinance of the city, had failed to submit, as he should have done, his proposed method of construction to the proper city authorities, and that the construction, as made, was in fact in respect to the points referred to in direct violation of the city ordinances.

There can be no question as to the fact that plaintiff's property was destroyed by a fire which originated on defendants' premises. No one saw the fire until it had gained some headway and, therefore, the exact place where it originated and its real cause were not directly established. When first the blaze was seen, it was near where the upper ends of the upright posts in the gable end of the building, over the furnace, connected with the wooden rafters of the building, and the wooden roof.

Plaintiff's position is that having shown that the blaze was first seen where the upright wooden posts reached the rafter and connected with the roof; having shown that the presence of the wooden posts gave occasion for a conflagration; that their presence was in violation of the city ordinances; that the fires in a cooper shop were of an intensity such as was likely, in case of an accumulation of heat in the bricks, to set fire to wooden posts in coming in contact with the same; the District Court should have given judgment in its favor in the absence of proof or the suggestion of the existence of any particular fact to which the fire could be traced.

There is no doubt that plaintiff's counsel have made a very strong presentation of his case, and had the cause, whether tried by a jury or passed upon by the district judge, resulted in a judgment in his favor, we would not have felt justified in reversing it, but the case comes before us under a judgment of the District Court, adverse to the plaintiff, and we would not be warranted in setting it aside, unless we were able to declare, and should declare, that the court erred in its conclusions.

We have reached the conclusion that the case is too close under the

evidence to enable us to do this. There are enough possible causes for the fire other than those suggested by the plaintiff and enough doubt as to where the fire actually originated to cause us to refrain from changing the judgment.

Plaintiff has not shown with sufficient certainty the fact that the fire as kept in the furnace was of an intensity such as to have led up as a consequence to the fire. The experiments were made in the absence of the defendants.

Evidence of that character is of the nature of hearsay evidence and it has been often rejected on that ground; if admissible at all it should have been shown affirmatively to have been made under the precise condition of things which it had been also shown defendants occupied at the time of the fire.

The furnaces in this case were not alike, and the pyrometer was inserted in plaintiff's furnace after a fire had been made therein and had been kept up steadily for a number of hours, with direct reference to the experiment which was to be made subsequently.

The ordinances of the city referred to do not pretend to make the fact of the building of a fire in a furnace constructed otherwise than as authorized by the council, give rise to legal liability by reason of the fact itself, nor did they attempt to authorize a conclusion or presumption *juris et de jure* from the building of such a fire, that any fire occurring on the premises had been occasioned by the use of such a furnace.

Assuming that the council had the authority to enact ordinances carrying with them such results, it has not exercised it.

As matters stand plaintiff had to establish the causal (by evidence more certain than has been adduced here) relations between the improperly constructed furnace and the fire which destroyed his property.

It should have been shown that the presence of the wooden posts over the furnace and in front of the chimney wall was the proximate cause of the fire. The furnace did not take up the whole width of the gable end of the building—there were other posts extending upward to the rafters and the roof, and downward to the floor upon which there were always more or less shavings; in addition to this the sides of the house inside were entirely ceiled with wooden planks and it was not shown how long the fire had been burning when first discovered.

For the reasons assigned the judgment of the District Court is hereby affirmed.

Rehearing refused.

MONROE, J., recused, having decided the case whilst sitting as judge of the District Court.