LINCOLN TRACTION COMPANY V. LUCY A. HELLER, AD-
MINISTRATRIX.*

FILED JUNE 9, 1904.    NO. 13,549.

1. **Negligence:** QUESTION FOR JURY. Where the proximate cause of an
injury depends upon a state of facts from which different minds
might reasonably draw different inferences, it is a proper
question for the consideration of a jury.

2. ———: ACTION. The violation of any statutory or valid munici-
pal regulations, established for the purpose of protecting per-
sons or property from injury, is, of itself, sufficient to prove
such a breach of duty as will sustain a private action for
negligence, if the other elements of actionable negligence con-
cur. *Omaha Street R. Co. v. Duvall*, 40 Neb. 29, followed and
approved.

3. **Street Railways:** LIABILITY FOR INJURIES. Street railway com-
panies are common carriers of passengers. As such they are
bound to exercise for the safety of their patrons more than
ordinary care. They are required to exercise the utmost skill,
diligence and foresight consistent with the business in which
they are engaged, and are liable for the slightest negligence.
*Lincoln Street R. Co. v. McClellan*, 54 Neb. 672, followed and
approved.

4. ———: ———. The law presumes that one injured while being
transported by a common carrier was injured in consequence
of the latter's negligence; and, to escape liability, it must show
that it has discharged the full measure of its legal duty, and
was in nowise to blame for the accident, unless defendant's
negligence contributed thereto. *Lincoln Street R. Co. v. Mc-
Clellan*, 54 Neb. 672.

5. **Trial:** REVIEW. Action of the trial court in refusing to enter
judgment on a verdict not agreed to by all of the jury is
correct.

ERROR to the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Clark & Allen*, for plaintiff in error.

*Burr & Spencer, contra.*

* Rehearing allowed. See opinion, p. 134, *post.*

OLDHAM, C.

Plaintiff, as administratrix of the estate of Thomas C. Heller, sued the defendant, the Lincoln Traction Company, alleging that through the negligence of the defendant, Thomas C. Heller was killed while being transported as a passenger on the defendant's car. The negligence charged in plaintiff's petition, briefly summarized, is, that there was no conductor on the car at the time deceased was injured; that the car was overheated; that the folding gate on the left side of the front platform was open; that the car was not provided with proper guards and fenders, was not a car of the latest pattern and was being operated in violation of the provisions of a city ordinance of Lincoln; that plaintiff's intestate while riding on the car became sick with vertigo and in attempting to leave the car fell from the front platform and was killed because of the dangerous and improper construction of the car. Defendant's answer was in substance a general denial and plea of contributory negligence. On issues thus joined there was a trial to the jury and verdict for plaintiff for $700; judgment on the verdict, and defendant brings error to this court.

The first question called to our attention in the brief of defendant company is, that the evidence is not sufficient to sustain the judgment. This contention has necessitated a careful review of a lengthy bill of exceptions, in which we find competent evidence introduced by plaintiff tending to show the following material facts bearing on the cause of the injury: About 6 o'clock on the evening of the accident, plaintiff's intestate entered defendant's street car at 11th and O streets, presumably intending to go to his residence in the southeastern portion of the city. The car was being operated by a motorman, without a conductor, and fares for the passage were deposited in a box at the end of the car, arranged for that purpose. After the deceased entered the car, he sat down for a few minutes, and when the car had gone near to C and 14th streets, he arose and rang the bell, presumably to have the

car stopped for the purpose of permitting him to alight. Plaintiff's testimony tended to show the deceased had suffered from a sunstroke sometime before the injury, and that when overheated he was subject to dizziness and sometimes to vertigo. Two of the passengers on the car noticed that deceased appeared to walk unsteadily from the car when he approached the forward door. The motor-man was checking the car in obedience to his signal, pre-paratory to stopping it at the 14th street crossing, when the accident occurred. When deceased stepped on the platform of the car, according to the evidence of those who saw the accident, he reeled and pitched forward to the ground. His clothing was caught by either the projecting hub or the oil can on the side of the car and he was drawn along the rail on the track for probably twenty feet, where he was picked up with his skull crushed and most, if not all, of his ribs broken. Plaintiff's evidence showed that the car operated by defendant company was an old horse car that had been reconstructed into an electric car, and that the car was what one of their wit-nesses called a "bob-tailed" car, that is, it was shorter and narrower than a modern car constructed for electric lines; that the wheels of the car projected even with and beyond the sides of the car. A platform had been built out at each end of the car when it had been reconstructed, causing the ends to project beyond the wheels under the car, which gave it an unsteady and rocking motion. It was in evidence, without dispute, that there were no fenders at the end of the car and no wire netting or other guards at the sides to protect the machinery underneath. Evidence was also introduced on the part of plaintiff, tending to show that the car was in no sense one of modern construction; but on the contrary, that it lacked many of the essential ap-pliances for public saftely which are in common use by electric street railways at the present day. An ordinance, regulating street railways of the city of Lincoln, duly enacted in 1898, was introduced, which provided as follows:

12

"The cars shall be of the latest pattern and provided with suitable guards or fenders, and at night a headlight shall be fixed to the front dash, or upon the roof thereof, and each car shall be operated by a competent and skilled motorman, and also, at such times and places as shall be required for the safety of the public, and passengers upon said cars, by a conductor, and said cars shall not be propelled at a dangerous rate of speed. The motorman or conductor as the case shall be, in charge of said cars, shall at all times be prepared to make change to an amount not to exceed two dollars."

The allegations with reference to the car being overheated and with reference to defendant's negligence in not closing the gate on the front end of the car were taken from the jury by the trial court, and the cause was submitted on the question of defendant's negligence in the construction of the car, and its failure to provide a conductor as well as a motorman for its operation. In support of the allegation of the petition, as to the necessity of a conductor, evidence was introduced tending to show that the car passed along the streets on which there was a large amount of travel, and particularly so at the hour at which plaintiff's intestate entered the car. In opposition to this, defendant interposed testimony tending to show that the car in use was one of a pattern frequently used on modern electric railways, and that plaintiff was under the influence of intoxicating liquor at the time of the injury, and also that the presence or absence of a conductor on the car was in no wise connected with the injury. After a careful examination of the record in this case, we are convinced that the question as to whether or not the car in which deceased was riding was properly constructed and protected by modern fenders and guards, was, under the testimony offered, a proper question for the determination of the jury.

The question as to whether the absence of wire netting, fenders and guards around the car was the proximate or only a remote cause of the injury, was one depending on

a state of facts from which different minds might reasonably have drawn different inferences, and under a well established rule of this court a proper question to be left to the jury. *Omaha Street R. Co. v. Loehneisen,* 40 Neb. 37. It seems to us that the question of the presence or the absence of a conductor on the car at the time of the injury, is likewise one from which different inferences might have been drawn by fair and reasonable minds. This conclusion is well illustrated by the arguments of the learned counsel for the contending parties, in the case at bar. It is claimed by counsel for the company that the presence of the conductor on the car, if one had been there, could have made no difference to the protection thrown around the deceased; that if such an employee had been on the car he would have been on the rear end platform, waiting to assist passengers to alight or to enter the car when the 14th street crossing was reached, and would not have had his attention directed to deceased as a passenger needing special assistance in alighting from the car. On the contrary, it is urged by counsel for the administratrix, that if a conductor had been on the car and doing his duty he could not have helped taking notice of the fact that the deceased was a sick man, who needed assistance in alighting from the car, and that it is the duty of the street railway to protect sick and afflicted people, whom they have accepted as passengers, with such extra care as their condition reasonably requires. This illustrates how different minds may draw different conclusions from a fact which might or might not be a contributing cause to this injury. Again, the ordinance of the city, introduced in evidence, required a conductor, as well as a motorman, to be provided wherever the necessity of public travel required it, and this court has laid down the rule in *Omaha Street R. Co. v. Duvall,* 40 Neb. 29, that "The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negli-

gence, if the other elements of actionable negligence concur."

Complaint is next urged against the action of the trial court in giving paragraphs 5 and 6 of instructions of the court, on its motion, which are as follows:

"When the plaintiff has shown that the deceased met with an injury, while being transported by the defendant, and plaintiff has sustained damages thereby, then the burden of proof is upon the defendant to prove by a preponderance of the evidence that it was not guilty of negligence, the proximate cause of his death. This is true unless the plaintiff's own testimony shows negligence upon the part of the deceased, contributing to his death, as approximate cause thereof.

"The burden of proof is upon the plaintiff to prove by a preponderance of the evidence the other allegations of its petition, that the deceased received injuries while being transported by the defendant company resulting in his death, that by reason thereof the plaintiff has sustained pecuniary damages as alleged in the petition, and the amount of such damage, if any."

It is urged that these instructions erroneously shifted the burden of proof on the defendant to show contributory negligence when the fact of the injury had been established. It seems to us, however, that these instructions are fully supported by the doctrine announced in *Lincoln Street R. Co. v. McClellan*, 54 Neb. 672, wherein SULLIVAN, J., speaking for the court said: "It is settled by the decisions of this court that street railway companies are common carriers of passengers. As such they are bound to exercise for the safety of their patrons more than ordinary care. They are required to exercise the utmost skill, diligence and foresight consistent with the business in which they are engaged, and are liable for the slightest negligence. This is the liability imposed by the common law on all carriers of passengers for hire. The law presumes that one injured while being transported by a common carrier was injured in consequence of the latter's

negligence; and to escape liability it must show that it has discharged the full measure of its legal duty and was in nowise to blame for the accident."

It is last urged that the district court erred in not entering judgment on the first verdict returned by a jury in this case in the lower court. The facts underlying this contention are, that when the case was first called for trial in the district court, a jury was impaneled, testimony was offered and arguments delivered by counsel and the jury instructed and directed to return a sealed verdict in the morning. When the jury returned in the morning, the foreman passed up a general verdict, with answers to special findings submitted by the court. When the verdict· and answers to the special findings were read, the court asked the jury if the verdict, and special findings, "Was the verdict of you all?" One of the jurymen answered in substance that it was not his verdict and that he did not agree to the special findings. The court thereupon gave additional instructions to the jury, and directed them to return to their room for further deliberation. After lengthy deliberation the jury reported that it was unable to agree and was discharged. Later in the same term another jury was drawn, and the trial proceeded anew. Counsel for the defendant company do not cite us to any legal principle, and certainly to no section of the statute, that was violated in refusing to receive the first verdict, when one of the jurors answered that such was not his verdict. In fact the court did just what section 290 of the code directs it to do, when on a poll of the jury one member answers in the negative.

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

LETTON, C., concurs. AMES, C., not sitting.

By the Court: For the reasons stated in the foreging opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed January 18, 1905. *Judgment of district court reversed:*

1. **Common Carrier: INJURY: INSTRUCTION.** In an action against a common carrier on its common law liability for negligence to recover damages for an injury causing the death of a passenger, it is error to instruct the jury that, "When the plaintiff has shown that the deceased met with an injury while being transported by the defendant, and the plaintiff has sustained damages thereby, then the burden of proof is upon the defendant to prove by a preponderance of the evidence that it was not guilty of negligence, the proximate cause of his death."

2. **Case Approved.** *Lincoln Traction Co. v. Webb,* 73 Neb. ——, approved and followed.

BARNES, J.

In this case Lucy A. Heller, as administratrix of the estate of Thomas C. Heller, deceased, recovered a judgment against the Lincoln Traction Company for alleged negligence, which it is claimed caused the death of the intestate. The company prosecuted error, and the judgment was affirmed. See opinion, *ante,* p. 127. A rehearing was ordered, and on the reargument it was strenuously contended that our opinion was wrong in approving of the 5th instruction given to the jury by the trial court, which reads as follows:

"When the plaintiff has shown that the deceased met with an injury, while being transported by the defendant, and the plaintiff has sustained damages thereby, then the burden of proof is upon the defendant to prove, by a preponderance of the evidence, that it was not guilty of negligence, the proximate cause of his death. This is true unless the plaintiff's own testimony shows negligence upon the part of the deceased, contributing to his death, as approximate cause thereof."

We have just had a similar question under consideration in *Lincoln Traction Co. v. Webb,* 73 Neb. ——, where we held that a like instruction was erroneous, because it placed the burden of proof on the wrong party.

Its effect being to shift the burden of proof from the plaintiff to the defendant, and because it also announced the rule that mere proof of injury, without more, raised the presumption of negligence on the part of the defendant company.

We cannot approve of the instruction quoted, for the reasons given in our opinion in the case last above mentioned. We have carefully read the record and instructions in the instant case to see if we could, in reason, adhere to our former opinion, but we are unable to do so. The instruction complained of is at variance with what we think is the true rule in such cases, and is quite inconsistent with the other instructions given by the trial court.

It appears that the deceased arose from his seat in the defendant's car, while it was in rapid motion, and without warning went to, and fell from, the front platform of the car to the ground; that he was caught by some part of the car and dragged some distance before it could be stopped, and that he died from the injuries thus received. The negligence charged was improper construction of the car; a violation of certain city ordinances; the want or lack of a conductor; and some other matters, none of which were of such a nature as to raise the presumption of negligence without direct proof of that fact. Therefore the instruction complained of was highly prejudicial to the rights of the defendant company, and falls clearly within the rule announced in *Lincoln Traction Co. v. Webb, supra.*

Our former opinion is therefore reversed and set aside, and the judgment of the district court is also reversed and the cause remanded for a new trial.

REVERSED.